# IN THE COURT OF APPEALS OF IOWA

_____

No. 26-0843
Filed July 22, 2026

_____

**In the Interest of G.W., Minor Child,**

**B.S., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Adair County,
The Honorable Andrew Zimmerman, Judge.

_____

**AFFIRMED**

_____

Adam D. Hanson of Hanson Law Office, Winterset,
attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Meggen L. Weeks of Meggen L. Weeks, P.L.C., Afton, attorney and
guardian ad litem for minor child.

_____

Considered without oral argument
by Tabor, C.J., and Chicchelly and Langholz, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights as to G.W., born in 2017.[1] On appeal, she challenges whether (1) sufficient evidence supports the grounds for termination, (2) termination is in the child's best interests, and (3) a permissive exception to termination should have been applied. Upon our review, we affirm the juvenile court's termination of the mother's parental rights.

## BACKGROUND FACTS AND PROCEEDINGS

The family came to the attention of the Iowa Department of Health and Human Services (HHS) in January 2025 when the father was arrested for possessing a substantial amount of methamphetamine in his vehicle and home. G.W. was present with the mother during the arrest because G.W. was being dropped off to begin a weekend visit with the father. Following the father's arrest, the mother became G.W.'s primary caregiver, but HHS had concerns about the mother's drug use.

The mother initially cooperated with HHS until March, when it was reported that she had left G.W. at a relative's home and was attempting to flee the state "because she was unable to provide a negative drug test." Fictive kin told HHS case workers that the mother had fled to Florida but had returned for the child, attempting to have G.W. sneak out of the relative's home to meet her around 2 a.m. one night. HHS spent a week attempting to locate G.W. and the mother until they were able to safely remove G.W. from the mother's care pursuant to a judicial removal order.

---

[1] The father also had his parental rights terminated but does not appeal.

Following removal, G.W. was placed with her uncle and his girlfriend, continuing to reside there throughout the case. G.W. was adjudicated a child in need of assistance (CINA) under Iowa Code section 232.96A(3)(b) and (16)(a) (2025) in April. The mother was offered fully supervised visitation with G.W. Though these visits generally went well, the mother would often miss scheduled visitations. When the mother had phone calls with G.W., the uncle's girlfriend noted that "[the mother] was slurring her words and appeared to be nodding off during the call noticed by long pauses and lack of responses. Additionally, [G.W.] had to loudly say her name into the telephone to get her attention."

The mother also failed to follow-through with HHS's recommendations for herself. Though she attended a substance-use evaluation, she failed to attend outpatient treatment as recommended. She did complete a mental-health evaluation but did not consistently attend her scheduled therapy sessions. Throughout this time, the mother repeatedly tested positive for methamphetamine, fentanyl, and other substances. In July, the mother was arrested for theft of a vehicle and missed several visits without notice. She was arrested again just months later for possession of drug paraphernalia and possession of a controlled substance (third or subsequent offense).

In August, the mother disappeared without notifying her family, the child, or HHS of her whereabouts. This continued until January 2026, when the mother called the HHS case manager and told them she was participating in inpatient treatment for substance use and wished to resume her nightly phone calls with G.W. After making this request, the mother then struggled to make the phone calls. Throughout this period, G.W. was increasingly upset and worried by the mother's limited contact. In February, the mother

3

left the treatment facility and was admitted to the hospital due to a medical condition. Both while she was hospitalized and after she returned to the inpatient program, the mother continued to have multiple drug tests that were positive for fentanyl.[2]

In January 2026, the State filed a petition to terminate the mother's and father's parental rights. The petition alleged statutory grounds under Iowa Code section 232.116(1)(b), (e), and (f). After a hearing, the juvenile court granted the State's petition with regard to paragraphs (b) and (e). The mother now appeals.

## STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). While not binding on us, we give weight to the juvenile court's fact findings, "particularly with respect to credibility determinations." *Id.*

Our review follows a three-step analysis in reviewing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, we consider whether statutory grounds for termination of the parent's rights exist under Iowa Code section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the children's best interests. *Id.* (following Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

---

[2] The mother also tested positive for various opiates at this time, but these were only in her system due to treatment of her medical condition.

## DISCUSSION

### I.    Statutory Grounds

We begin with the grounds for termination. "When the district court terminates an individual's parental rights on more than one statutory ground, we may affirm termination on any one of the cited grounds we find supported by the record." *In re A.B.*, No. 25-1956, 2026 WL 380405, at *2 (Iowa Ct. App. Feb. 11, 2026).

We analyze the mother's challenge to the statutory ground for termination of her parental rights under Iowa Code section 232.116(1)(e). The mother does not dispute that the State met the first two elements of termination under this paragraph. *See* Iowa Code § 232.116(1)(e)(1) (the child has been adjudicated CINA), (2) (the child has been removed from the parent's physical custody for at least six consecutive months). The mother only disputes the third element requiring "clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so." *Id*. § 232.116(1)(e)(3).

> "[S]ignificant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

*Id.*

Here, the mother failed to take any actions necessary to resume or maintain her relationship with G.W. Though she completed initial

evaluations, she did not follow HHS's recommendations for continued substance-use and mental-health treatment. During this case, she had numerous positive drug tests and continued to deny any substance use, instead accusing others of contaminating her results. *See In re A.L.*, No. 17-0970, 2017 WL 4050985, at *3 (Iowa Ct. App. Sep. 13, 2017) (finding that a mother's continued denials of her substance use constituted a failure to make progress). Though she requested regular visitations and phone calls with G.W., the mother would miss visits or fall asleep during phone calls, causing distress and confusion for G.W. The mother's disappearance for several months resulted in a temporary cessation of contact with G.W., followed by very limited contact. *See In re J.E.*, No. 15-0187, 2016 WL 2753774, at *9 (Iowa Ct. App. May 11, 2016) ("The voluntary failure of a parent to maintain regular communication can justify termination."). The juvenile court noted these concerns, stating that "the evidence reflects a diminished and inconsistent parental bond between [G.W.] and [the mother] . . . . [T]hat bond cannot be said to be 'strong' and . . . it has surely weakened over time due to [the mother's] inconsistency, denials regarding substance use, missed visits, and declining phone contact."

We find that the mother did not maintain significant and meaningful contact with G.W. and uphold the termination of her parental rights under paragraph (e). *See In re A.J.*, 553 N.W.2d 909, 912–13 (Iowa Ct. App. 1996) (finding that a parent's sporadic phone calls and history of having no contact for months at a time supported termination under paragraph (e)); *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable.").

## II.    Best Interests

The mother next asserts that termination was not in the child's best interest.    Under our best interest analysis, we "shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord W.M.*, 957 N.W.2d at 313–14.  Recently, our court has clarified that "the parent-child bond is a relevant consideration in the best-interests analysis." *In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025) (en banc).

The mother argues that her bond with G.W. was strong enough to preclude termination, stating that her participation in inpatient treatment and having phone visits with the child shows that termination is not in the best interest of G.W.  As we noted above, the record reflects the mother's inconsistency and lack of change for over a year. *See In re J.L.P.*, 449 N.W.2d 349, 353 (Iowa 1989) (finding that a mother's failure to accept services or work with HHS for over a year was a lack of progress leading to termination). Even after she entered treatment and attempted to resume phone contact with G.W., those calls ended less than two weeks later when, once again, HHS could not get in contact with the mother.  And during inpatient treatment, the mother failed to produce any negative drug tests.

Though the mother was in the beginning stages of change, it came too late. *See In re J.M.*, No. 18-0163, 2018 WL 1631391, at *3 (Iowa Ct. App. Apr. 4, 2018) (finding that a parent's last-minute change was "too little too late" and did not preclude termination).  We share the juvenile court's concerns that the mother's inconsistencies have harmed G.W. and have damaged the bond between the two.  Because "[w]e do not gamble with the children's future by asking them to continuously wait for a stable biological

7

parent," we find that termination is in the best interests of the child.  *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (cleaned up).

## III.    Permissive Exception

Lastly, the mother argues that a permissive exception under Iowa Code section 232.116(3) should have applied.  Once the State has proven a ground for termination, the burden shifts to the parent to establish an exception to termination.  *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).  Specifically, the mother asserts that the juvenile court should have denied termination because G.W. was in relative placement with her uncle.  Iowa Code section 232.116(3)(a) allows the juvenile court to forgo termination if "[a] relative has legal custody of the child."

While it is true that G.W. has been placed with her uncle since removal from the mother's care in March 2025, it is not true that the uncle has legal custody of G.W.  *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021) (differentiating between legal custody and placement).  As made clear by the removal and adjudication orders, legal custody of the child lies with HHS for the purposes of relative placement.  We find that the juvenile court did not err in finding that no permissive exceptions apply.

## CONCLUSION

Because we find that the ground for termination under Iowa Code section 232.116(1)(e) was proved, termination is in the child's best interests, and the mother did not prove a permissive exception should apply, we affirm the termination of the mother's parental rights.

**AFFIRMED.**